UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUG STROSNIDER,<br><br>                    Plaintiff,<br><br>       v.<br><br>CITY OF NAMPA, *et. al.*,<br><br>                    Defendants | Case No. 1:14-cv-00459-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Dkt. 42). The Court heard oral argument o the motion on May 23, 2016, and now issues the following Memorandum Decision and Order.

## BACKGROUND

Doug Strosnider was an Assistant Fire Chief at the Nampa Fire Department. Sometime in 2013-14, Nampa Fire Department Chief, Karl Malott, assigned Strosnider to head the Fire Prevention Bureau. Because of fire safety concerns he had with two apartment buildings, Golden Glow Towers and Landmark Towers, Strosnider assigned two of his Deputy Fire Marshals to inspect and investigate the buildings. He also informed some of Nampa's elected officials, including the Mayor, of his concerns. Strosnider indicated that he may need to issue Notice and Orders to the building owners,

**MEMORANDUM DECISION AND ORDER - 1**

requiring them to make improvements or be shut down. The Mayor did not think that was a good idea, but Strosnider eventually issued the Notice and Orders. Strosnider was subsequently placed and leave, and ultimately terminated from the fire department. This law suit followed.

### STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt

**MEMORANDUM DECISION AND ORDER - 2**

unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

### I.      Section 3617 Claim

It is unlawful to coerce, intimidate, threaten, or interfere with any person on account of his having aided or encouraged any other person in the exercise of their rights under the Fair Housing Act. 42 U.S.C. § 3617. Section 3617 "extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus." *Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 347–48 (6th Cir.1994); *see also Walker v. City of*

*Lakewood*, 272 F.3d 1114, 1127 (9th Cir.2001) (discussing the same and citing with approval *Michigan Protection*).

To prove a § 3617 claim, courts apply the familiar *McDonnell Douglas* analysis. *Walker,* 272 F.3d at 1128. "[A] plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. If a plaintiff presents a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. *Id*. (Internal citations omitted).

As a preliminary matter here, however, Defendants argue that Strosnider does not fall within the scope of § 3617. Defendants suggest Strosnider seeks to stretch the law too far by asserting an employment law claim in the form of a § 3617 claim. Essentially, Defendants contend that Strosnider's employment with Nampa was not related to housing, and that Defendants had nothing to do with the housing rights of individuals at the Golden Glow or Landmark housing units. But § 3617 is broad, and the facts of this case show that it applies here. Section 3617 is violated when a defendant retaliates against someone who "aid[s] or encourage[s] any other person in the exercise or enjoyment of, any rights" under the FHA. 42 U.S.C. § 3617. That is the allegation here. And as explained below, there are sufficient factual allegations to allow the claim to proceed to a jury. Accordingly, Strosnider falls within the scope of the statute.

**MEMORANDUM DECISION AND ORDER - 4**

Turning to the merits of the claim, the Court finds that the claim survives summary judgment. Taken in the light most favorable to Strosnider, the facts indicate that Strosnider was contacted by IFHC to aid in a fair housing investigation of the Golden Glow and Landmark housing units, that he directed his subordinate, Reggie Edwards, to turn over potentially incriminating FHA violating evidence to IFHC, and that he was placed on administrative leave and ultimately terminated for these actions. Under these circumstances, a jury could reasonably conclude that Strosnider was punished for aiding IFHC's fair housing investigation. And Defendants' generic argument that Chief Malott terminated Strosnider simply for "poor management skills and lack of judgment" is unsupported by the record and insufficient to meet their burden of articulating a legitimate nondiscriminatory reason for that decision. *Def. Opening Br.,* p. 8, Dkt. 42-1. At the very least, there is a disputed issue of fact as to why Strosnider was terminated. Accordingly, the Court will deny summary judgment on the § 3617 claim.

## II.    First Amendment Claim

To prevail on his First Amendment claim, Strosnider must show that (1) he spoke on a matter of public concern, (2) he spoke as a private citizen, (3) his protected speech was a substantial or motivating factor in the adverse employment action, (4) the city did not have an adequate justification for treating him different from other members of the general public, and (5) the city would not have taken the adverse employment action absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The only issue challenged on summary judgment is whether Strosnider spoke as a private citizen or as a public employee.

MEMORANDUM DECISION AND ORDER - 5

"[S]tatements are made in the speaker's capacity as a citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n. 2 (9th Cir. 2008) (Internal citations and quotations omitted). Strosnider's communication with IFHC was not within his official employment duties. His communication with IFHC was not about fire code compliance. Strosnider had no official duty to communicate with anybody or any organization about housing discrimination. Accordingly, Strosnider was speaking as a private citizen, and the Court will deny summary judgment on his First Amendment claim.

## III.    Whistleblower Act Claim

Idaho's whistle-blower statute, formally called the Idaho Protection of Public Employees Act, "protect[s] the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." Idaho Code § 6-2101. To establish a whistle-blower claim, "a plaintiff must establish, by a preponderance of the evidence, 'that the employee has suffered an adverse action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6–2104, Idaho Code." *Patterson v. State Dept. of Health & Welfare*, 256 P.3d 718, 724–25 (Idaho 2011)(Internal citations and quotations omitted). "Under Idaho's Whistleblower Act, a prima facie case for retaliatory discharge requires [the employee] to show: (1) he was an employee who engaged or intended to engage in protected activity; (2) his employer took adverse action against him; and (3) the existence of a causal

MEMORANDUM DECISION AND ORDER - 6

connection between the protected activity and the employer's adverse action." *Van v. Portneuf Med. Cntr.*, 330 P.3d 1054, 1059 (Idaho 2014) (Internal citation and quotation omitted).

The Court has already determined that the traditional *McDonnell Douglas* balance shifting analysis applies. *Brown v. Caldwell,* 2012 WL 892232, *7 (D.Idaho 2012). Similar to the § 3617 claim above, application of that analysis is as follows: (1) the plaintiff must establish a prima facie case of retaliatory conduct for an action protected by the whistleblower statute; (2) if the plaintiff establishes a prima facie case, the defendant must produce evidence which, if taken as true, would permit the conclusion that there was a non-retaliatory reason for the adverse action; and (3) if the defendant articulates a legitimate non-retaliatory reason for discharge, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the reason the defendant offers is a pretext for retaliatory conduct." *Van*, 330 P.3d at 1059.

Here, Strosnider inspected two buildings, Golden Glow and Landmark, and found safety hazards for tenants and firefighters. He communicated his findings to both Mayor Henry and Chief Malott, and he initiated procedures to enforce the fire code in this regard by issuing Notice and Orders to both buildings. Additionally, Strosnider informed Northwest ADA and IFHC about his findings, which IFHC used in its investigation into housing violations at the properties. Under § 6-2104(2), "[a]n employer may not take adverse action against an employee because an employee participates or gives information in an investigation. . . ." Idaho Code § 6-2104(2).

**MEMORANDUM DECISION AND ORDER - 7**

Under these circumstances, taking the facts in the light most favorable to Strosnider, he has established a prima facie case of retaliatory conduct for an action protected by the whistleblower statute. And as noted above under the § 3617 claim, Defendants generic argument that Chief Malott terminated Strosnider simply for "poor management skills and lack of judgment" is insufficient to meet the burden of articulating a legitimate nondiscriminatory reason for its decision. Accordingly, the Court will deny summary judgment on the whistle-blower claim.[1]

## IV. Due Process Claims

### 1. At-Will Employee

Strosnider's due process claims turn primarily on whether he was an at-will employee. For continued employment to constitute a protected property interest, a person must have a reasonable expectation or a "legitimate claim of entitlement" to the benefit of continued employment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *See Harkness v. City of Burley*, 110 Idaho 353, 356 (1986) ("employee must have more than a mere hope of continued employment"). In Idaho, employment is presumptively "at-will" and either party may end the relationship at any time without incurring liability. *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 240 (2005). But the at-will presumption is rebuttable by either an express or implied limitation upon a party's right to terminate the employment relationship. *Id.* at 241. An implied limitation exists

---

[1] The Court need not address Defendants' argument that the whistleblower claim may not proceed against the individual defendants because Strosnider indicates that he is asserting the claim only against the City of Nampa. *Plf. Br.,* p.9, Dkt. 45.

when a reasonable person could conclude from all the circumstances surrounding the relationship that both parties intended to limit the other party's right to terminate the relationship. *Id.* "Statements made and policies promulgated by the employer, whether in an employment manual or otherwise, may give rise to such an implied-in-fact agreement." *Bollinger v. Fall River Rural Elec. Co-op.*, 152 Idaho 632, 638 (2012).

Several things are potentially at play in determining whether Strosnider was an at-will employee, including the city of Nampa's employee handbook, the Nampa Fire Department's Rules and Regulations and disciplinary policies, and Nampa City code. First, although Strosnider concedes that the Nampa employee handbook does not itself create a property interest in his employment, he references sections of it that suggest it allows the Nampa Fire Department to do so. For example, it states that "[t]he policies and procedures in this handbook may not be applicable in all cases." *Def. Ex. H,* Dkt. 42-11. The argument then follows that the Nampa Fire Department Rules and Regulations create a property interest in Strosnider's employment. *Def. Ex.* 14, Dkt. 46-14. Those Rules and Regulations indicate that dismissal may be made for "delinquency, misconduct, inefficiency, or inability to perform the work of the position." *Def. Ex. 14,* Dkt. 46-14. Notably, they also explain that "[e]xamples of *cause* for dismissal are contained within these Rules and Regulations." *Id.* (Italicized emphasis added). A few sections later, they list more than 30 examples of conduct which may be cause for disciplinary action. *Id.* Under these circumstances, the Court finds that a reasonable person could conclude from all the circumstances surrounding the relationship that both parties intended to limit the Nama Fire Department's right to terminate its employees.

**Memorandum Decision and Order - 9**

But this is only true in this case if the Rules and Regulations apply to non-union members like Strosnider. Defendants suggest they do not, but there is at least a question of fact on that issue. Although the forward to the Rules and Regulations references "members" several times, it is not clear that it is referring to only union members as opposed to all members of the Nampa Fired Department. In fact, just the opposite seems true, and at one point the document specifically refers to "members of the Department. . . ." *Id.* at p.1. Moreover, section 16 of the Rules and Regulations references "members who head various Subdivisions of the Nampa Fire Department. . ." suggesting the Rules and Regulations apply to members in leadership roles like Strosnider, not just union members. That is a question which the finder of fact, whether it be the Court or a jury, must determine after hearing more extensive evidence on the matter.

Because there is a question of fact as to whether the Rules and Regulations create a property interest for Strosnider, the Court need not address whether Policy 1000 likewise does so. However, for the parties' edification, the Court notes that it likely does not. That policy specifically addresses how deputy and battalion chiefs are responsible for ensuring an equitable discipline system, and it lays out who is typically responsible for disciplining subordinate employees. Employees with ranks equal to and above Strosnider are referenced as those who discipline, and employees ranked below him are referenced as those who will be disciplined under the policy. *Def. Ex.* 16, p. 2, Dkt. 46-16. This is a strong indication that the policy does not create a property interest in the employment of fire department members like Strosnider. But this issue may also be determined after more extensive evidence is presented to the fact finder.

MEMORANDUM DECISION AND ORDER - 10

The question of whether Nampa City code creates a property interest for Strosnider is also somewhat academic at this point given the Court's ruling above, but the Court notes that it too involves a question of fact. First, a section of the city code entitled Personnel System indicates that it "establish[es] a system of personnel administration to serve the city" that is "consistent with the following merit principles." One of those principles is that employees should be separated based "on a competitive comparison of their relative ability, knowledge, skills and work performance." This language could be seen by a finder of fact as having created a property interest in employment.

Next, even though Idaho's version of the fire code removed language specifically stating that assistant fire marshals could only be terminated for cause, this does not necessarily mean they are at-will employees – it just leaves it an open question. And although the ordinance includes a list of exempted positions, including "department heads," that term is undefined. And Defendants admit that Strosnider was not one of the typical department heads who reported to the Mayer; instead they note that he was one of many department heads in the fire department. This is an issue of fact which must be determined after more extensive evidence. Accordingly, summary judgment will be denied.

### 2.  Procedural Due Process for Liberty Interest

Injury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution. *Ulrich v. City and County of San Francisco,* 308 F.3d 968, 982 (9th Cir. 2002) (*citing Paul v. Davis*, 424 U.S. 693, 701 (1976). But governmental action defaming an individual in the course of the hiring and firing process

may entitle him to notice and an opportunity to be heard as to the defamation. *Id.* (Internal citation omitted). This is known as the "stigma plus" test for establishing deprivation of liberty based on governmental defamation. *Id.* "Under that test, a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the denial of some more tangible interest[ ] such as employment, or the alteration of a right or status recognized by state law." *Id.* (Internal quotation and citation omitted). When these elements are met, "the plaintiff is entitled to notice and a hearing to clear his name." *Id.* (Internal quotation and citation omitted).

Here, Defendants only argue that no stigmatizing comments were made public, and that Strosnider was given a name-clearing hearing anyway. Defendants concede the other elements of the claim for purposes of summary judgment.

Defendants suggest that according to Idaho Code § 74-106(1), no documents related to Strosnider's disciplinary actions can be made public without his written consent. Section 74-106 is one set of several exemptions to Idaho's Public Records Act requiring transparency in public records. It involves personnel records, among others. But the statute specifically exempts personnel records from public disclosure, "other than the public official's public service or employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace and employing agency." I.C. § 74-106(1). Under this language, the stigmatizing language could easily be considered part of Strosnider's employment history and therefore subject to public disclosure.

Having met the elements of the stigma-plus test, the question becomes whether Strosnider received a hearing to clear his name. "[A] terminated employee has a

**MEMORANDUM DECISION AND ORDER - 12**

constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley,* 359 F.3d 1105, 1110 (9th Cir. 2004). Due process requires that a person be given notice of his impending termination and a pre-termination hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). Id. at 542. "It is well-settled that the Due Process Clause requires . . . 'a fair trial in a fair tribunal.'" *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir.1995). However, an impartial decision maker at a pre-termination hearing does not necessarily violate due process as long as the decision maker at a post-termination hearing is impartial. *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir.1991).

On the facts presented to the Court on summary judgment, it appears Strosnider was not given a pre-termination hearing. *Def. SOF,* ¶ 21, Dkt. 42-2. And the post-termination hearing was conducted by Mayor Henry, a named defendant in this case. There is at least a genuine issue of material fact as to whether Mayor Henry was impartial, given the allegations in this case that he was opposed to Strosnider's actions at the subject properties, and that Strosnider intended to call him as a witness at the hearing. Under these circumstances, the Court will deny summary judgment on the procedural due process claim.

## V.     Breach of Contract/Good Faith and Fair Dealing

Defendants suggest Strosnider's breach of contract/good faith and fair dealing claims must fail because the working rules above do not apply to him. The argument essentially relies upon Defendants' due process claim argument. Because the Court determined there remains a question of fact on that claim regarding the working rules,

MEMORANDUM DECISION AND ORDER - 13

summary judgment on the breach of contract/good faith and fair dealing will also be denied.

## VI.    Qualified Immunity

Defendants seek qualified immunity on Strosnider's constitutional claims. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 731. To overcome qualified immunity, a plaintiff must satisfy a two-part test. *Saucier v. Katz*, 533 U.S. 194, 201, (2001). First, the Court must consider whether the plaintiff's allegations, taken as true, establish a constitutional violation. *Id*. Second, if such allegations do establish a constitutional violation, the Court must determine whether the right was clearly established. *Id*. at 202.

Defendants suggest the law related to Strosnider's constitutional claims was not clearly established. To be clearly established, "[c]ourts do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *C.F. ex rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 986 (9th Cir.2011) (internal quotation marks omitted). The contours of the right must be described with reasonable particularity, rather than cast at a high level of generality. *Id*. The purpose is to ensure the law gives fair notice to government officials so that "a reasonable official would understand that what he is doing violates that right." *Id*. (internal quotation marks omitted).

MEMORANDUM DECISION AND ORDER - 14

Here, as explained above, Nampa Fire Department Rules and Regulations create a property interest in Nampa Fire Department employment. *Def. Ex.* 14, Dkt. 46-14. Those Rules and Regulations indicate that dismissal may be made for "delinquency, misconduct, inefficiency, or inability to perform the work of the position," and explain that "[e]xamples of cause for dismissal are contained within these Rules and Regulations." *Def. Ex. 14,* Dkt. 46-14. Thus, it was clearly established that Strosnider could not be deprived of his employment without due process.

It was also clearly established that disclosure of a stigmatizing statement by the government, without notice and a hearing violates is a procedural due process violation. It was clearly established, based upon the facts of this case, that providing Strosnider with only a short meeting with the Mayor would violate his due process rights. Accordingly, the individual defendants are not entitled to qualified immunity.

## ORDER

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 42) is **DENIED**.

DATED: July 25, 2016

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 15**